[L.A. No. 32081. Dec. 30, 1985.]

IMELDA VICTORIA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KAISER FOUNDATION HOSPITALS et al., Real Parties in Interest.

## COUNSEL

Gantz & Forer, Frank Munoz, Emmett J. Gantz and Steven B. Stevens for Petitioner.

No appearance for Respondent.

Thelen, Marrin, Johnson & Bridges, Curtis A. Cole and Mary A. Barnett for Real Parties in Interest.

## OPINION

**BIRD, C. J.**—Does the arbitration provision in a health service agreement, which covers any claim "arising from rendition or failure to render services," apply to a claim against the health care provider for negligent employment of an orderly accused of sexually assaulting a patient?

### I.

Petitioner, Imelda Victoria, was admitted to a hospital owned by real party in interest, Kaiser Foundation Hospitals (hereafter Kaiser), for brain surgery in August of 1984. According to the allegations of petitioner's complaint, she was repeatedly sexually assaulted, raped and sodomized during her recovery from the surgery by real party in interest, Haynes, a hospital orderly.

Petitioner sued both the alleged perpetrator and Kaiser. Her complaint stated two causes of action against Kaiser, one for the negligent infliction of emotional distress and the other for the negligent selection, employment, retention and supervision of the employee who committed the alleged assaults.[1] Specifically, petitioner contends that Kaiser knew that the employee had sexually assaulted female patients on at least two prior occasions.

---

[1] Petitioner's causes of action against the orderly are not at issue in this proceeding.

Kaiser answered the complaint and moved to stay the action and compel arbitration. Kaiser argued that the allegations of petitioner's complaint fell within the scope of an arbitration clause contained in the group medical and hospital service agreement (Agreement) between Kaiser and Southern California Edison Company, the firm through which petitioner became a Kaiser member.[2] Respondent superior court granted Kaiser's motion, stayed the action and ordered that the matter proceed to arbitration. This petition followed.

## II.

Petitioner seeks a writ of mandate directing the superior court to set aside its order compelling arbitration and to exercise its jurisdiction to hear the case. She argues that her causes of action against Kaiser are outside the scope of the arbitration clause. She has requested expedited review because, she asserts, her life expectancy is short.

This case requires the court to balance the general policy favoring arbitration against ordinary principles of contract, which require that agreements be interpreted to reflect the intent of the parties. Ambiguities in contract language are to be resolved against the drafter.

The arbitration clause in this contract provides that, "Any claim arising from alleged violation of a legal duty incident to this Agreement shall be submitted to binding arbitration if the claim is asserted: (1) by a Member . . .[;] (2) On account of death, mental disturbance or bodily injury *arising from rendition or failure to render services under this Agreement,* irrespective of the legal theory upon which the claim is asserted; (3) For monetary damages exceeding the jurisdictional limit of the Small Claims Court; and (4) Against one or more of the following . . .: (a) Health Plan, (b) Hospitals, (c) Medical Group, (d) Any Physician, or (e) Any employee of the foregoing." (Italics added.)

■■■ "[A]rbitration has become an accepted and favored method of resolving disputes [citations], praised by the courts as an expeditious and economical method of relieving overburdened civil calendars. [Citation.]" (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178]; see also *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251] [hereafter *Ericksen*].) However,

---

[2]Plaintiff was eligible for membership in Kaiser as a family dependent of her father, an employee of Southern California Edison Company.

judicial enthusiasm for alternative methods of dispute resolution must not in all contexts override the rules governing the interpretation of contracts.

Certain basic principles of contract interpretation are applicable. First, "the policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate." *(Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 356 [133 Cal.Rptr. 775, 84 A.L.R.3d 343], italics added; accord *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341].) In addition, "[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties *intended* to contract." (Civ. Code, § 1648, italics added.)

■ Finally, ambiguities in standard form contracts are to be construed against the drafter. *(Baker* v. *Sadick* (1984) 162 Cal.App.3d 618, 625 [208 Cal.Rptr. 676]; *Player* v. *Geo. M. Brewster & Son, Inc.* (1971) 18 Cal.App.3d 526, 533 [96 Cal.Rptr. 149]; Civ. Code, § 1654.) This court must apply these basic principles to determine whether the petitioner's causes of action fall within the scope of the arbitration clause.

Many arbitration provisions between health care providers and patients are governed by Code of Civil Procedure section 1295. Enacted as a part of the Medical Injury Compensation Recovery Act (MICRA), section 1295 provides that any contract for medical services which contains an arbitration provision must include certain specified language alerting the patient to the scope and nature of the arbitration.[3] Certain "health care service plans" are

---

[3]Code of Civil Procedure section 1295 provides in pertinent part:

"(a) Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.'

"(b) Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type:

"'NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.'

"(c) Once signed, such a contract governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice within 30 days of signature. Written notice of such rescission may be given by a guardian or conservator of the patient if the patient is incapacitated or a minor.

"(d) Where the contract is one for medical services to a minor, it shall not be subject to

exempted from these requirements if they comply with alternative statutory notice requirements. (Code Civ. Proc., § 1295, subd. (f).)

Kaiser is an exempt health care service plan. As such, it is not required to utilize the specific language of Code of Civil Procedure section 1295. However, it is required to include in its disclosure forms a statement that the plan utilizes arbitration to settle disputes. (Health & Saf. Code, § 1363, subd. (a)(10).) The plan contracts must also "set forth *the type of disputes subject to arbitration,* the process to be utilized, and how it is to be initiated." (Health & Saf. Code, § 1373, subd. (i), italics added.)

Kaiser claims it intended to encompass "everything it does" within the scope of the arbitration clause. It argues that both of petitioner's causes of action fall within the scope of the arbitration clause and that the parties could not have drafted a clause which more clearly expressed the intent to include such claims.[4]

Petitioner contends that her causes of action against Kaiser are outside the scope of the arbitration clause. She claims that the boilerplate language drafted by Kaiser is not specific enough to satisfy the statutory requirement.

---

disaffirmance if signed by the minor's parent or legal guardian.

"(e) Such a contract is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies with subdivisions (a), (b) and (c) of this section.

"(f) Subdivisions (a), (b), and (c) shall not apply to any health care service plan contract offered by an organization registered pursuant to Article 2.5 (commencing with Section 12530) of Division 3 of Title 2 of the Government Code, or licensed pursuant to Chapter 2.2 (commencing with Section 1340) of Division 2 of the Health and Safety Code, which contains an arbitration agreement if the plan complies with paragraph (10) of subdivision (a) of Section 1363 of the Health and Safety Code, or otherwise has a procedure for notifying prospective subscribers of the fact that the plan has an arbitration provision, and the plan contracts conform to subdivision (h) of Section 1373 of the Health and Safety Code."

The reference in the last sentence quoted to subdivision (h) of section 1373 of the Health and Safety Code appears to be erroneous. It is Health and Safety Code section 1373, subdivision (i), not subdivision (h), which deals with arbitration. Section 1295, subdivision (f) and Health and Safety Code section 1373 were amended simultaneously. (Stats. 1976, ch. 1185, §§ 92, 94, pp. 5320, 5323.) A Senate amendment to Assembly Bill No. 3371 inserted new subdivision (h) into Health and Safety Code section 1373, resulting in a redesignation of the former subdivision (h) as subdivision (i). The reference to subdivision (h) in Code of Civil Procedure section 1295 was apparently overlooked, however. It was not amended to reflect the new designation. It is clear that Code of Civil Procedure section 1295, subdivision (g)'s reference to Health and Safety Code section 1373, subdivision (h) was actually intended to refer to section 1373, subdivision (i). Therefore, references in this opinion will be to section 1373, subdivision (i).

[4]Kaiser argues repeatedly that "it is difficult to imagine what, if not the language used, could convey the parties' intent to arbitrate all claims *arising out of services rendered (or not rendered) pursuant to the Agreement.*" (Italics added.) Of course, this characterization completely begs the question. The issue in this case is whether petitioner's causes of action are within the scope of the phrase "arising out of services rendered (or not rendered) pursuant to the Agreement." Kaiser's repetition of the phrase does not make it any less ambiguous, nor in any meaningful way clarify its scope. (See, *infra,* p. 742.)

Essentially, she argues that a clause purporting to waive the patient's constitutional right to trial by jury, and her opportunity for appeal and judicial review, should be much more explicit if it is to be given effect.

Specifically, petitioner contends that the language of the arbitration clause calls for a two-step analysis. First, to be covered by the clause, a claim must arise from "a legal duty incident to" the Agreement. Second, it must arise from "the rendition or failure to render services" under the Agreement. Petitioner argues that her claims do not meet this second requirement.

The term "services" in the arbitration clause must be defined by looking to the "Definitions" in section 1, subparts K and L of the Agreement, according to petitioner. Subpart K defines "Medical Services" and subpart L defines "Hospital Services."

The definitions to which petitioner refers are as follows: "K. Medical Services: Except as expressly limited or excluded by this Agreement, those medically necessary professional services of physicians and surgeons, other health professionals and paramedical personnel, including medical, diagnostic, therapeutic and preventative services which are (1) generally and customarily provided in Southern California and (2) performed, prescribed, or directed by the Attending Physician.

"L. Hospital Services: Except as expressly limited or excluded by this Agreement, those medically necessary services for registered bed patients which are (1) generally and customarily provided by acute general hospitals in Southern California and (2) prescribed, directed or authorized by the Attending Physician."

Throughout the Agreement, the term "services" is used in various contexts from which it is clear that the term refers primarily to Medical and Hospital Services.[5] It is reasonable to assume that the term "services" in the arbitration clause refers to Medical and Hospital Services as defined and used elsewhere in the Agreement. (See Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].)

---

[5]For example, section 11 of the Agreement (the Benefit Schedule) provides in part that, "Members are entitled to the Medical and Hospital Services and other benefits set forth in this Section, upon payment of specified Supplemental Charges or Non-Member rates. These *services* and benefits are available only if and to the extent that they are provided, prescribed or directed by a Physician . . . ." (Italics added.)

While there are certain additional types of "services" defined in the Agreement (e.g., "Extended Care Services," "Ambulance Service," "Mental Health Services") these additional definitions appear clearly inapplicable to petitioner's causes of action.

Petitioner contends that her claims against Kaiser do not involve rendition of or failure to render Medical or Hospital Services, as defined in subparts K and L, and are, therefore, not covered by the arbitration clause.

Section 11 of the Agreement gives further insight into the definition of "Hospital Services." It provides in part, "When prescribed, the following Hospital Services are provided without charge: room and board; general nursing care; services and supplies; use of operating room; private room; intensive care room and related hospital services; special diet; special duty nursing; medications . . .; and medical supplies." Kaiser argues that the services provided by an orderly are included in this definition of "Hospital Services."

Kaiser stresses that plaintiff's primary claim against the hospital is for the negligent employment of the orderly. Kaiser's employment of the orderly, it argues, arose out of its duty to provide Hospital Services. The only means by which the hospital can provide any services to patients is by employing individuals to perform those services. Thus, it contends, plaintiff's claim that the hospital negligently employed the orderly arises from the rendition or failure to render services under the Agreement.

Petitioner argues that her cause of action did not arise from the rendition of services under the Agreement, but from an intentional sexual assault committed outside the employee's scope of employment. The orderly's alleged conduct can scarcely be characterized as "medically necessary services," which are "prescribed, directed or authorized by [an] attending Physician." If Kaiser intended the arbitration clause to apply to *every* dispute between the hospital and a patient, there was no need to define arbitrable claims as those arising from rendition or failure to render "services" under the Agreement.

The parties' conflicting interpretations, each of which has some inherent appeal, demonstrate that the scope of the arbitration clause is at best ambiguous. Petitioner states that any ambiguity in the arbitration clause should be interpreted in her favor. Kaiser, on the other hand, contends that even if the clause is ambiguous "it should be construed broadly to encompass all claims not clearly beyond its scope."

█ Petitioner contends that the arbitration clause should be interpreted in her favor because the clause is part of a contract of adhesion. █ If the arbitration clause is adhesive, ambiguities will be subject to stricter construction against the party with the stronger bargaining power. (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819, fn. 16 [171 Cal.Rptr. 604, 623 P.2d 165]; *Ericksen, supra,* 35 Cal.3d at p. 322, fn. 7.)

██ "The term 'adhesion contract' refers to standardized contract forms offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." (*Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d at p. 356.)

██ The arbitration clause here is similar, if not identical, to the clause which was approved by this court in *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699. Although the contract in that case was not a product of individual bargaining, this court found that it was not adhesive because it was the result of bargaining between parties enjoying equal bargaining strength—the Board of Administration of the State Employees Retirement System and Kaiser. (*Id.,* at pp. 710-711.) In addition, the plaintiff in that case had the opportunity to select from several medical plans, some of which did not include arbitration provisions. (*Id.,* at p. 711.)

As in *Madden,* the Agreement here is between parties of apparently equal bargaining strength—Southern California Edison Company and Kaiser. Therefore, it is difficult to conclude that the arbitration clause included in the Agreement is the result of overreaching by a party with superior bargaining power.

██ Although the entire Agreement cannot be denominated an adhesion contract, it does have some adhesive characteristics. (See *Player* v. *Geo. M. Brewster & Son, Inc., supra,* 18 Cal.App.3d at pp. 533-534.) Petitioner points out that the Agreement is a lengthy, standard form contract. The arbitration clause is but a small, indistinguishable part.[6] It is apparent that the Agreement is a standard form contract which Kaiser utilizes for *all, or almost all,* of the groups to which it provides services. (See, e.g., *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699; *Wilson* v. *Kaiser Foundation Hospitals* (1983) 141 Cal.App.3d 891, 894 [190 Cal.Rptr. 649].)

The last two pages of the Agreement, which contain spaces for the signatures of representatives of both sides, are simply attached to Kaiser's standard Medical and Hospital Services Agreement. The language of the Agreement was drafted by Kaiser. It is not clear whether Southern California Edison Company could have procured Kaiser coverage for its employees without accepting the terms of Kaiser's standard contract.

---

[6]Petitioner claims that the enrollment form is also a standardized form. Three lines of small print repeat a portion of the arbitration clause, but, she says, almost half of that language is obliterated by another form which is attached to the enrollment form.

Unlike *Madden,* it is *not* clear from the record whether petitioner's father had an opportunity to select an alternative health care plan which did not require arbitration.

In the context of this case, ordinary rules of contract interpretation should be applied. While it has been held that "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration" (*Ericksen, supra,* 35 Cal.3d at p. 323), that rule was announced in the context of a commercial contract devoid of allegations or evidence of adhesion. The agreement in this case may be more analogous to standardized insurance contracts in which it has long been established that "ambiguous clauses . . . are to be interpreted against the insurer . . . ." (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 868 [27 Cal.Rptr. 172, 377 P.2d.284].) In *Steven,* this court noted that "[t]he rule of resolving ambiguities against the insurer does not serve as a mere tie-breaker." (*Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d at p. 871.) Instead, "it rests upon fundamental consider-ations of policy[, i]n view of the somewhat fictional nature of intent in standardized contracts . . . ." (*Ibid.*)

■ Although "[t]he law favors contracts for arbitration of disputes between parties" (*Player* v. *Geo. M. Brewster & Son, Inc., supra,* 18 Cal.App.3d at p. 534), " 'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .' " (*Weeks* v. *Crow* (1980) 113 Cal.App.3d 350, 353 [169 Cal.Rptr. 830], quoting *Freeman* v. *State Farm Mut. Auto. Ins. Co., supra,* 14 Cal.3d at p. 481; see also *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d at p. 356.) ■ In determining the scope of an arbitration clause, "[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstan-ces under which the agreement was made [citation]." (*Weeks* v. *Crow, supra,* 113 Cal.App.3d at p. 353.)

■ The intentions of the parties to this arbitration clause are not clear. When arbitration provisions first became commonplace in health service contracts, the issue was often whether *medical malpractice* claims were covered in addition to financial disputes over hospital bills or physician's fees. (See Henderson, *Contractual Problems in the Enforcement of Agree-ments to Arbitrate Medical Malpractice* (1972) 58 Va.L.Rev. 947, 975.)

In *Madden,* this court noted the "growing interest in and use of arbitration to cope with the increasing volume of medical malpractice claims." (*Mad-den* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d at p. 708.) The Leg-islature's enactment of Code of Civil Procedure section 1295, which spe-cifically provides for the arbitration of claims of "professional negligence,"

acknowledged and encouraged the use of arbitration in malpractice disputes. Thereafter, a plaintiff could no longer reasonably contend that this type of arbitration clause was not intended, or expected, to apply to medical malpractice claims.

Petitioner's claims involve neither financial disputes nor medical malpractice. Instead, she alleges a breach of the common law duty of an employer to exercise due care in the employment and supervision of an employee who inflicted intentional harm on her. (See *Berger* v. *Southern Pac. Co.* (1956) 144 Cal.App.2d 1 [300 P.2d 170, 60 A.L.R.2d 1104].) Furthermore, the employee's alleged misconduct was entirely outside the scope of his employment. It had nothing to do with providing, or failing to provide, services. He is not accused of negligently failing to empty a bedpan. He is accused of the sexual assault and rape of petitioner.

Surely it was not contemplated, let alone expected, by either party to the Agreement that this sort of attack would befall petitioner while she was hospitalized under Kaiser's care. It is, therefore, difficult to conclude that the parties intended and *agreed* that causes of action arising from such an attack would be within the scope of the arbitration clause.

It is a well-settled rule of law that ambiguities in a written contract are to be construed against the party who drafted it. (See *Baker* v. *Sadick, supra,* 162 Cal.App.3d at p. 625; *Player* v. *Geo. M. Brewster & Son, Inc., supra,* 18 Cal.App.3d at p. 533; *Taylor* v. *J. B. Hill Co.* (1948) 31 Cal.2d 373, 374 [189 P.2d 258].) "In cases of uncertainty . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Civ. Code, § 1654.)

The arbitration clause in this case was drafted by Kaiser. Petitioner challenges Kaiser's interpretation of that clause. Since the application of the clause to the causes of action is uncertain, ordinary contract principles require the clause to be construed in favor of petitioner.

Kaiser relies principally on three cases as support for its argument that petitioner's claims fall within the scope of the arbitration clause: *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, *Herrera* v. *Superior Court* (1984) 158 Cal.App.3d 255 [204 Cal.Rptr. 553] and *Baker* v. *Sadick, supra,* 162 Cal.App.3d 618. This reliance is misplaced. All three of these cases involve causes of action for *medical malpractice.* Petitioner's causes of action are not related to medical malpractice, and the application of the arbitration clause to her claims is much less obvious.

*Madden* held that a bargaining agent for a group who contracts for medical treatment on behalf of a beneficiary has "the authority to enter into an

agreement providing for arbitration of claims for *medical malpractice.''* (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d at p. 709, italics added.) The opinion in *Madden* did not address the scope of the arbitration clause. Thus, this holding sheds little light on the application of the arbitration clause to a cause of action unrelated to medical malpractice.

Both *Herrera* and *Baker* held that the term "professional negligence," as used in Code of Civil Procedure section 1295, included intentional torts. In *Herrera,* the Court of Appeal concluded that a complaint for *medical malpractice,* which included allegations of intentional torts by the defendant physician, was subject to arbitration. There, the arbitration clause contained the clear and unmistakable language required by Code of Civil Procedure section 1295, which by its express terms applies only to actions for medical malpractice.[7]

The court concluded that "[t]he arbitration provision's own definition of malpractice obviously includes more than negligence. Moreover, it is settled law that a malpractice action can include theories other than negligence . . . ." (*Herrera* v. *Superior Court, supra,* 158 Cal.App.3d at p. 261.) The *Herrera* court's expansive reading of the term "medical malpractice" as used in the arbitration clause has little bearing on the issue presented here. Again, this case does not involve an action for medical malpractice.[8]

Similarly, the issue in *Baker* involved the scope of a clause that provided for the arbitration of "any dispute as to medical malpractice." (*Baker* v. *Sadick, supra,* 162 Cal.App.3d at p. 622.) The defendant doctor maintained that the arbitrator was without authority to award punitive damages against him, arguing that the reference in Code of Civil Procedure section 1295 to "professional negligence" did not include intentional torts. However, the Court of Appeal allowed the award of punitive damages. (*Id.,* at p. 626.)

Like *Herrera, Baker* is distinguishable from this case in that it involves only medical malpractice claims. To the extent that it provides a meaningful analogy, the *Baker* court's construction of an ambiguous arbitration clause *against the drafter* scarcely supports Kaiser's position. (*Baker* v. *Sadick, supra,* 162 Cal.App.3d at p. 625.)

---

[7]See *ante,* footnote 3, for the text of Code of Civil Procedure section 1295.

[8]In addition, the court in *Herrera* noted only that medical malpractice can include causes of action for battery, breach of contract, and deceit. (*Herrera* v. *Superior Court, supra,* 158 Cal.App.3d at p. 261.) It did not hold, nor imply, that the arbitration clause at issue would necessarily be applicable to a cause of action against a doctor for an intentional tort arising outside the scope of the provision of medical services—for example, sexual assault on a patient.

Finally, Kaiser argues that the "tenor" of *Ericksen, supra,* 35 Cal.3d 312, requires a decision in favor of arbitration in all but the most egregious of circumstances. "[I]n order for the *Ericksen* rule to operate, properly," Kaiser contends, "it must be applied without limitation or other qualifying decisions." Any limiting rule "would sound the death knell for the entire arbitration system. . . ."

In the narrow context of this case, however, construction of the arbitration clause against its drafter is fully warranted. An ambiguous arbitration clause is contained in a standardized form contract. The cause of action against Kaiser is for the negligent employment of an orderly who, acting entirely outside the scope of his employment, is alleged to have committed grievous assaults on a patient. Such an interpretation does no violence to the general policy in favor of arbitration.

### III.

The scope of the arbitration clause here is unclear. The ambiguity in that language must be interpreted against the drafter, Kaiser. Since the orderly's alleged conduct fell outside the scope of his employment and it is unlikely that the parties either intended or agreed that the clause would apply in these circumstances, the contract should be so construed.

Let a writ of mandate issue to respondent superior court directing that the order to compel arbitration be set aside. The superior court is ordered to exercise its jurisdiction to bring this case to trial as expeditiously as possible.

Mosk, J., Broussard, J., Reynoso, J., and Kawaichi, J.,* concurred.

**LUCAS, J.**—I respectfully dissent. Undoubtedly, the underlying conduct allegedly committed by Kaiser Foundation Hospitals' (hereinafter Kaiser) employee is shocking and reprehensible. The causes of action we confront here, however, do not concern the employee's liability, or whether Kaiser is liable under principles of vicarious liability for the alleged conduct of the employee. Instead, we are concerned only with whether Kaiser is liable for its own primary affirmative negligent conduct. As to those particular allegations we must determine not if plaintiff has a right to proceed, but rather in which forum she must prosecute her claims against Kaiser.

Plaintiff's relevant causes of action against Kaiser claim that it breached its duty to her "by failing to exercise reasonable care in the selection,

---

*Assigned by the Chairperson of the Judicial Council.

employment, retention and supervision of [the employee] . . . [and that] Kaiser . . . knew or in the exercise of reasonable care should have known, that [the employee] . . . had a prior history of criminal conduct that made him unfit for employment in any position in which he would be in contact with patients, including the plaintiff."

Further, she alleges that "Kaiser . . . knew that [the employee] . . . had a prior history of violent criminal conduct that rendered him unfit for employment in a position of contact with patients, and that despite this advance knowledge, selected and employed him with a conscious disregard for the rights, safety and welfare of the public, and of the plaintiff . . . ." Moreover, she asserts that Kaiser had knowledge of other sexual assaults by its employee on the premises "during the course of employment" and that it nonetheless, "failed and refused to investigate the prior complaints and continued to employ [him]." In other words, as I will explore, the sole basis of liability and the sole breach asserted lies in Kaiser's conduct in failing to exercise care in its duties *as an employer of persons rendering services* to those such as plaintiff.

The arbitration clause in the agreement at issue here covers "Any claim arising from an alleged violation of a legal duty incident to his agreement . . . if the claim is asserted: [¶] (1) by a Member . . . [¶] (2) On account of death, mental disturbance or bodily injury arising from rendition or failure to render services under this Agreement, *irrespective of the legal theory upon which the claim is asserted* . . . ." (Italics added.) The agreement defines "Hospital Services" as, "[e]xcept as expressly limited or excluded by this Agreement, those medically necessary services for registered bed patients which are (1) generally and customarily provided by acute [care] general hospitals . . . and (2) prescribed, directed or authorized by the Attending Physician."[1]

An obvious component of the provision of services is the retention, employment and supervision of persons who render such services. In fact, it is upon an asserted breach of this legal duty that plaintiff's claim against Kaiser rests. If plaintiff were injured because an employee with a drinking problem was not at his or her station and instead had left to take a drink, the breach of duty alleged under a cause of action based on the hospital's conduct in hiring and retaining the employee would essentially be the same.

---

[1]In addition, the agreement states that "When prescribed, the following Hospital Services are provided without charge: room and board; general nursing care; services and supplies; . . . ." The services performed by an orderly obviously are included. No physician writes specific prescriptions for the number of sheets to which a patient is normally entitled, or the number of times the bed is to be changed, yet such "services and supplies" are provided without charge as part of the general "prescription" for hospital care.

As Restatement Second of Agency section 213, states: "A person conducting an activity through servants . . . is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . . [¶] (b) in the employment of improper persons . . . involving the risk of harm to others . . . ." Note that liability arises in such causes of action from the *employer's* actions which antedate the employee's misconduct.

Comment (d) to the Restatement section explains that "One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent, vicious or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand . . . . [¶] Liability results . . . not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." (See Annot. (1973) 48 A.L.R.3d 359.) Thus the employer is not liable merely because the employee has injured the third party. Nor is the employer's liability different whether he negligently employs a careless or a vicious employee; the relevant breach lies in the employer's acts vis-à-vis selection of the employee.[2]

My colleagues rest their conclusion that the arbitration clause here was ambiguous on finding credible plaintiff's argument that "her cause of action did not arise from the rendition of services under the Agreement, but from an intentional sexual assault committed outside the employee's scope of employment." (*Ante,* p. 742.) In finding ambiguity, the majority ignores the elements of the cause of action actually alleged by the plaintiff herself. The underlying conduct of the employee was certainly a contributing cause. Nonetheless, assuming arguendo that she will be able to establish every element of her causes of action against the *employee,* plaintiff must still prove Kaiser's *primary* and independent misconduct in its "selection, employment, retention and supervision of [its employee] . . . ." By improperly focusing only on the employee's conduct, rather than on the actual claim

---

[2]This principle was demonstrated in a different context in *Underwriters Ins. Co.* v. *Purdie* (1983) 145 Cal.App.3d 57 [193 Cal.Rptr. 248], where a liquor store was sued for negligent employment when its employee shot a deliveryman during an argument. The insurance policy covering the incident contained a firearms exclusion clause. The court reviewed California law, observing that in this state "an employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. (*Rahmel* v. *Lehndorff* (1904) 142 Cal. 681 [76 P. 659]; *Monty* v. *Orlandi* (1959) 169 Cal.App.2d 620, 624-625 [337 P.2d 861] . . . .)" (145 Cal.App.3d at p. 69.) Responding to the insurer's claim that the exclusion clause governed, the court concluded that "the use of the firearm in the instant case . . . was a mere contributing cause." (*Id.* at p. 70.) The key negligent act involved was the "hiring of an employee with a propensity for violence" (*id.* at p. 69) and coverage therefore extended to the employer's acts in that regard despite the employee's use of a firearm to inflict injury.

against Kaiser, the majority has strained to find ambiguity where none exists.

Even if one assumes for purposes of argument that ambiguity exists as to the application of the arbitration clause here, I see no reason to depart, in this case, from well-established principles of arbitration law. Underlying this area is the strong preference California courts have traditionally held for arbitration. (See *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251] [hereinafter *Ericksen*].) This well-established public policy favors arbitration as a speedy and inexpensive method of resolving disputes, beneficial to all parties. (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 595 [183 Cal.Rptr. 360, 645 P.2d 1192], partially revd. on other grounds, *sub nom.*, *Southland Corp.* v. *Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 103 S.Ct. 852]; *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 711-712 [131 Cal.Rptr. 882, 552 P.2d 1178].)

Rejecting the generally applicable principle that "arbitration agreements should be liberally construed" (*Baker* v. *Sadick* (1984) 162 Cal.App.3d 618, 623-624 [208 Cal.Rptr. 676]), and ignoring the basic tenet which we only recently reaffirmed that "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration [citations]" (*Ericksen, supra,* 35 Cal.3d at p. 323), the majority utilizes instead a confusing and incomplete analysis to conclude that ordinary rules of contract interpretation should be applied. In view of the express legislative support for the use of arbitration mechanisms to resolve disputes involving health care providers, the majority's failure to clearly explain upon what basis it chooses to reject usually applicable principles becomes even more troubling.

My colleagues observe, for example, that "The intentions of the parties to this arbitration clause are not clear." (*Ante,* p. 744.) This declaration merely begs the question of which set of rules should apply. It is highly unlikely that the problem of how to deal with ambiguity in an arbitration clause will arise if the parties' intentions are crystal clear. In any event, ambiguity, and questions relating to the parties' intentions, have normally never been treated as a basis for rejecting rules applicable to arbitration agreements. It is true of course that "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable." (*Freeman* v. *State Farm Mut. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341].) It is equally true, however, that "[c]ourts should indulge every intendment to give effect to such proceedings [citation] and order arbitration unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (*Pacific Inv. Co.* v. *Town-*

*send* (1976) 58 Cal.App.3d 1, 9 [129 Cal.Rptr. 489]; see also *Van Tassel* v. *Superior Court* (1974) 12 Cal.3d 624, 627 [116 Cal.Rptr. 505, 526 P.2d 969]; *Weeks* v. *Crow* (1980) 113 Cal.App.3d 350, 353 [169 Cal.Rptr. 830].)

Only two years ago we utilized this principle to hold that a claim that an agreement was itself fraudulently obtained was a matter within the scope of arbitration. That rule stemmed in large part from a recognition that opening the door too widely to litigation over the scope of arbitration clauses would tend to deprive the parties to the arbitration agreement of the very advantages the process is intended to produce. To that end, we concluded in *Ericksen* that "in the absence of indication of contrary intent, and where the arbitration clause is reasonably susceptible of such an interpretation, claims of fraud in the inducement of the contract . . . will be deemed subject to arbitration." (35 Cal.3d at p. 323, fn. omitted.)[3] Here, the majority concedes that Kaiser's interpretation of the agreement "has some inherent appeal" which "demonstrate[s] that the scope of the arbitration clause is at best ambiguous" (*ante,* p. 742), but gives that grudging conclusion no effect despite explicit precedent making such a finding of major significance.

Of course, the general rule is otherwise where the arbitration clause is part of an adhesive contract. Indeed, the majority flirts with utilizing principles involving such contracts. But my colleagues concede as they must that in *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, we held that freely negotiated group contracts for hospital and medical coverage are not contracts of adhesion. The majority seeks to avoid the *Madden* analysis and to import contrary principles of interpretation on the basis that the contract here has certain "adhesive characteristics" and is in "standard form." These considerations do not, in my view, justify creating an exception to the general rules of liberal construction applicable to arbitration, nor, in the end, do my colleagues expressly rely upon the factors to which they refer as a basis for finding an exception.

Perhaps then the majority's rationale rests in the claim that "Surely it was not contemplated, let alone expected, by either party to the Agreement that this sort of attack would befall petitioner while she was hospitalized under Kaiser's care. It is, therefore, difficult to conclude that the parties

---

[3]*Ericksen* of course looked to both state and federal authority in determining which principles to apply. The United States Supreme Court recently reiterated the concept that "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25 [74 L.Ed.2d 765, 785, 103 S.Ct. 927].) The majority's opinion here thus bucks not only state but also federal trends.

intended and *agreed* that causes of action arising from such an attack would be within the scope of the arbitration clause." (*Ante,* p. 745.)[4] It is immediately after this pronouncement, but without drawing any conclusions, that the majority launches into its discussion of the treatment of ambiguities under general contract rules rather than rules applied to agreements to arbitrate.

Examination of the above language demonstrates the pervasive fallacies of the majority's opinion in this respect. First, of course, the attack giving rise to the claim may well not have been specifically contemplated at the time the contract was signed. Arbitration agreements when executed before a dispute arises are, if intended for broad coverage, of necessity unspecific in their descriptions of arbitrable claims. Moreover, even if we were to apply a "reasonable expectations" analysis, as the majority suggests, the question is not whether the patient expected to be raped, but whether she expected a dispute over the hospital's hiring practices to go to arbitration. *Herrera* v. *Superior Court* (1984) 158 Cal.App.3d 255 [204 Cal.Rptr. 553], and *Baker* v. *Sadick, supra,* 162 Cal.App.3d 618, which the majority distinguishes by arguing they involved medical malpractice claims, are instructive.

In those cases the court addressed whether arbitration provisions governed by Code of Civil Procedure section 1295 extended to claims other than those asserting medical malpractice based on negligence. In the former case, the plaintiff objected to arbitration; in the latter, the defendant doctor did so.[5] In both the court concluded that claims alleging intentional torts were covered by the arbitration agreements.[6]

In order to reach the conclusion that the intentional tort claims were arbitrable, the Court of Appeal construed section 1295 of the Code of Civil Procedure. Subdivision (a) of the section states: "Any contract for medical services which contains a provision for arbitration of *any dispute as to professional negligence* of a health care provider shall . . . [utilize the fol-

---

[4]One wonders, if this conduct was so completely unthinkable and not subject to anticipation, how the hospital can be found liable for negligent employment. The majority may have won the battle for plaintiff, but essentially lost for her her war.

[5]Interestingly, in *Baker* the arbitration clause was construed *against the doctor* so as *to require arbitration* of punitive damages claims. Here, of course, the majority construes the clause *against the health provider* so as *to require court adjudication.* This further demonstrates the problems of using a "reasonable expectations" rule. It would be extremely difficult to apply, leading to different results under the same contract language depending upon who wished to go to arbitration.

[6]For example, in *Herrera,* the plaintiff amended her complaint to include causes of action alleging torts such as assault and battery, fraud and deceit, and unjust enrichment. (158 Cal.App.3d at pp. 257-259.) All such claims were found arbitrable.

lowing language:] 'It is understood that any dispute *as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered,* will be determined by submission to arbitration . . . .' " (Italics added.) Subdivision (g) of the section, interestingly not cited by the majority along with the rest of the provision, defines "Professional negligence" as "a negligent act or omission to act by a health care provider *in the rendering of professional services,* which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Italics added.)

Rather than construing the section narrowly as applicable only to claims arising out of negligent acts by a health care provider, the *Herrera* court instead concluded "As we read section 1295, the language about disputes regarding professional negligence, and definition of professional negligence, are designed to set the threshold of the type of action in which the arbitration provision will be used . . . . [T]he language which the Legislature specified must be included in the arbitration provision shows that the Legislature intended arbitration of disputes over medical services to extend beyond negligence." (158 Cal.App.3d at p. 262; see *Baker* v. *Sadick, supra,* 162 Cal.App.3d at p. 626.) The Court of Appeal looked to the statutory intent to encourage generally arbitration of claims relating to provision of health care as well as the general public policy favoring arbitration. While Kaiser is not subject to all the terms of section 1295 (see subd. (f)) it and similar health care providers are still required to set forth arbitration clauses in agreements with subscribers.[7] There is no indication that the Legislature intended that such agreements be more narrowly construed than those governed in their entirety by section 1295's terms.[8]

---

[7]An additional consideration weighing against utilization of the "reasonable expectations" rule adopted by the majority is that it would require case-by-case litigation, defeating the general policy favoring arbitration reflected in the Legislature's enactment of section 1295.

[8]The decision of the United States Supreme Court in *Steelworkers* v. *Warrior & Gulf Co.* (1960) 363 U.S. 574 [4 L.Ed.2d 1409, 80 S.Ct. 1347], is illuminating. The court considered there the role of courts in overseeing promises to arbitrate made in the labor context. Acknowledging that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" (p. 582 [4 L.Ed.2d at p. 1417]), the court emphasized that in view of the strong congressional policy favoring settlement through arbitration, "the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree *to give the arbitrator power to make the award he made* . . . . Doubts *should be resolved in favor of coverage.*" (363 U.S. at pp. 582-583, fn. omitted [4 L.Ed.2d at pp. 1417-1418].) The Legislature similarly has expressed a strong preference for use of arbitration to resolve disputes arising in regard to provision of health care and services. As did the United States Supreme Court, we should therefore give great weight to such explicit indications of legislative intent. This the majority has entirely failed to do.

The definition of "professional negligence" remains applicable to Kaiser under the terms of the section. Kaiser is charged here with breaching its duty to employ proper personnel to render care to patients, conduct which falls within the definition of "a negligent act or omission to act . . . in the rendering of professional services." The issue is *not,* as the majority has it, the employee's conduct per se, but rather it is Kaiser's asserted role as an employer which hired and retained a person without proper inquiry or attention to his background and performance.

The bottom line is that the agreement here was indisputably susceptible to the interpretation urged by Kaiser and relied upon by the trial court. In fact, given the nature of the actual claim against Kaiser, I believe it is the *only* plausible interpretation. But even assuming that the plaintiff's version reaches the level of creating ambiguity, I have searched in vain for an explanation in the majority opinion of why it is appropriate here to discard and disregard express legislative preference and abundant precedent relating to resolution of such disputes.

I would affirm the trial court judgment granting Kaiser's motion to submit the matter to arbitration.

Grodin, J., concurred.

The petition of real parties in interest for a rehearing was denied March 18, 1986. Grodin, J., Lucas, J., and Panelli, J., were of the opinion that the petition should be granted.