Filed 3/23/15  Riley v. Morgan Stanley Wealth Management CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| CARRIE RILEY,<br><br>        Plaintiff  and Respondent.<br><br>v.<br><br>MORGAN STANLEY WEALTH MANAGEMENT AND EMMA BRIDGES,<br><br>        Defendants and Appellants, | 2d Civil No. B256177<br>(Super. Ct. No. 1439543)<br>(Santa Barbara County) |

Morgan Stanley Wealth Management (Morgan Stanley) and Emma Bridges appeal from an order denying their motion to compel arbitration of the first through eighth causes of action in a complaint filed by Morgan Stanley's former employee, Carrie J. Riley, respondent.[1]  The causes of action allege violations of the Fair Employment and Housing Act (FEHA).  (Gov.Code, § 12900 et seq.)  Appellants contend that arbitration is mandated by agreements signed by respondent.  We disagree and affirm.

---

[1] Morgan Stanley states that it was "sued erroneously herein as Morgan Stanley Wealth Management."  Its true name is "Morgan Stanley Smith Barney LLC."

*Facts and Procedural History*

In November 2010 respondent was hired by Morgan Stanley as a financial adviser in its Santa Barbara office, which was managed by appellant Emma Bridges. When she was hired, she signed a "Form U4" which contained an arbitration agreement. Respondent agreed to arbitrate any dispute between her and Morgan Stanley that is required to be arbitrated under the rules of the Financial Industry Regulatory Authority (FINRA).

During her employment, Morgan Stanley made three unsecured, low-interest loans to respondent in the amounts of $267,700, $47,400, and $128,794. Respondent signed three promissory notes. Each note contains a provision requiring the arbitration of "[a]ny controversy or claim arising out of or relating to this Note." The arbitration must be in accordance with the rules of FINRA. Each note also contains an acceleration clause stating that all amounts outstanding will become "immediately due and payable" if respondent "voluntarily terminates [her] employment with [Morgan Stanley] or is terminated by [Morgan Stanley] for any reason or no reason."

In July 2013 respondent left Morgan Stanley and went to work for a competitor, Merrill Lynch. In October 2013 Morgan Stanley initiated an arbitration proceeding before FINRA by filing a statement of claim against respondent. Pursuant to the promissory notes' acceleration clauses, Morgan Stanley sought to recover all amounts outstanding under the notes.

In January 2014 respondent filed a complaint for damages against Morgan Stanley and Bridges. The complaint alleged that respondent had been "forced to leave Morgan Stanley" because it "allowed a lesbian manager - [appellant] Emma Bridges . . . - to threaten [her] and sexually harass, humiliate, torment, and punish [her]." "Bridges' overarching goal was to force [respondent] - a happily married woman with two young children - to be her lesbian partner. . . . Repeatedly, [respondent] forcefully rebuffed Bridges who then escalated her efforts and threatened [respondent] on numerous occasions at the office." Respondent has epilepsy, which was in remission

2.

when she started working for Morgan Stanley. As a result of Bridges' harassment, respondent suffered "20 grand mal seizures, some of which were nearly fatal." "[M]anagement turned a deaf ear to [respondent's] numerous oral and written pleas for assistance and protection." Respondent claimed that her "employment was constructively terminated as a result of [appellants'] violation of fundamental public policies."

Respondent's complaint consists of 15 causes of action. The first through eighth causes of action allege violations of FEHA and are entitled: (1) "sex discrimination"; (2) "sexual harassment, hostile work environment"; (3) "sexual harassment, quid pro quo"; (4) "disability discrimination" (the disability was respondent's epilepsy); (5) "failure to accommodate disability"; (6) "failure to engage in the interactive process"; (7) "failure to investigate and/or prevent discrimination and harassment"; and (8) "retaliation." The eighth cause of action alleges that appellants "retaliated against [respondent] . . . by constructively terminating her." The ninth through fifteenth causes of action allege common law, nonstatutory torts: (9) "wrongful termination in violation of public policy," (10) "battery," (11) "defamation," (12) "intentional infliction of emotional distress," (13) "invasion of privacy," (14) "intentional interference with contract," and (15) "intentional interference with prospective economic advantage."

Two weeks after filing her complaint, respondent filed an answer to Morgan Stanley's statement of claim in the arbitration proceeding. As her seventeenth affirmative defense, respondent alleged that the arbitration "should be stayed pending the final outcome" of her civil action against appellants because "[i]f [she] prevails in that . . . lawsuit, she will have a complete defense to [Morgan Stanley's] Statement of Claim."

On the same date that she filed her answer, respondent signed a FINRA Arbitration Submission Agreement (Submission Agreement) stating that she agreed to "submit the present matter in controversy, as set forth in the attached statement of

3.

claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure."

Appellants filed a motion to compel arbitration of the 15 causes of action in respondent's complaint for damages. They contended that the arbitration clauses in the Submission Agreement and promissory notes encompass all of the causes of action. Appellants conceded that the arbitration clause in Form U4, which respondent signed when she was hired by Morgan Stanley, does not require the arbitration of her first through eighth statutory FEHA causes of action. The concession was based on FINRA rule 13201.[2] Appellants observed that this rule "does not require employment discrimination claims in violation of a statute to be arbitrated." But "the parties by separate agreement . . . may agree to arbitrate such claims. [Citation.] Appellants continued: "Because [respondent] and [Morgan Stanley] agreed to arbitrate all claims asserted here in the three Promissory Notes and the Submission Agreement, [respondent's] first through eighth causes of action . . . are subject to binding arbitration under those arbitration agreements."

The trial court granted appellants' motion to compel arbitration of the ninth through fifteenth nonstatutory causes of action. It denied the motion to compel arbitration of the first through eighth statutory FEHA causes of action. The court concluded "that an agreement [i.e., the arbitration clause in Form U4] exists to arbitrate all claims of [respondent] except for her statutory discrimination claims." In her appellate brief respondent "concedes that that she was required to arbitrate her nonstatutory claims pursuant to form U4."

---

[2] FINRA rule 13201 provides in relevant part: "A claim alleging employment discrimination, including sexual harassment, in violation of a statute, is not required to be arbitrated under the Code. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose."

4.

The court severed the ninth through fifteenth nonstatutory causes of action and ordered that they be decided in the arbitration proceeding. But respondent's counsel told the court that, in view of its ruling, "we are not going to proceed on the nonstatutory claims at FINRA[,] here[,] or anywhere." Counsel said that he would file a first amended complaint omitting the nonstatutory claims. On the other hand, counsel stated that he was "going forward on my FEHA claims" (the first through eighth causes of action).

The court granted appellants' motion to stay court proceedings on the first through eighth causes of action pending the outcome of the arbitration. It denied respondent's motion to stay the arbitration.

*Standard of Review*

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning. [Citation.]" (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) Here, the parties offered no extrinsic evidence on the meaning of the arbitration agreements. We therefore apply the de novo standard of review.

*Interpretation of Arbitration Agreements*

"In determining the scope of an arbitration clause, '[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made [citation].' [Citation.]" (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.) "Certain basic principles of contract interpretation are applicable. First, 'the policy

5.

favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.' [Citations.] In addition, '[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties *intended* to contract.' [Citation.] [¶] Finally, ambiguities in standard form contracts are to be construed against the drafter. [Citation.]" (*Id.*, at p. 738.)

### FINRA Rule 13803

FINRA rule 13803, subdivision (f) provides: "If a member or a current or former associated person files in court a claim against a member or a current or former associated person that includes matters that are subject to mandatory arbitration, either by the rules of FINRA or by private agreement, the defending party may, upon motion, compel arbitration of the claims that are subject to mandatory arbitration."

### Arbitration Clauses of Promissory Notes

Each of the three promissory notes is a standard form contract requiring the arbitration of "[a]ny controversy or claim arising out of or relating to this Note." Appellants maintain that this provision requires the arbitration of respondent's first through eighth statutory causes of action. Appellants observe that, in respondent's seventeenth affirmative defense in her answer to Morgan Stanley's statement of claim, she alleged that "she will have a complete defense to this Statement of Claim" if she "prevails in [her] state court lawsuit."[3] Appellants argue: "By raising her

---

[3] The full text of the seventeenth affirmative defense is as follows: "As a seventeenth separate and affirmative defense, and without admitting any of the allegations in the Statement of Claim, these arbitration proceedings should be stayed pending the final outcome of Respondent's lawsuit against Morgan Stanley and Emma Bridges in Civil Case No. 1439543 pending in the Superior Court for Santa Barbara County. In that lawsuit, Claimant alleges, among other things, wrongful termination due to pervasive sexual harassment, a hostile work environment, abuse, retaliation, and discrimination on the basis of her Epilepsy. If Respondent prevails in that state court lawsuit, she will have a complete defense to the Statement of Claim."

6.

discrimination claims as a defense in the arbitration, [respondent] by her own conduct made clear that they 'relate to' the Notes [and are therefore subject to mandatory arbitration]."

In rejecting appellants' argument, the trial court reasoned: "The arbitration provisions of the Notes by their terms exclude . . . defenses [other than respondent's payment of the notes]. This exclusion demonstrates that claims which 'arise out of or relate to the Notes' are limited to the claims directly related to payment or nonpayment of the Notes." The court relied on the following provision in the arbitration clause of the promissory notes for $260,700 (signed in 2010) and $47,400 (signed in 2011): "Borrower expressly waives Borrower's right to assert in opposition to any claim by Note Holder . . . any condition, excuse, defense, counterclaim, or right of offset, except for proof of payment by Borrower . . . . Borrower expressly agrees that, except for proof of payment, any such assertion shall only be made by Borrower in a separate arbitration proceeding." Because respondent's statutory FEHA claims are not related to payment or nonpayment of the notes, the court concluded that she was not required to arbitrate these claims under the notes' arbitration clause despite her seventeenth affirmative defense.

The trial court correctly determined that the arbitration clause of the 2010 and 2011 notes does not encompass respondent's statutory FEHA claims. The clause makes clear that, in any arbitration proceeding relating to the notes, respondent waives her right to assert these claims as a defense because they have no bearing on proof of payment, the only permissible defense.

We reject appellants' contention that the arbitration clause of the 2010 and 2011 notes requires that the FEHA claims be heard in an arbitration proceeding that is separate from the arbitration proceeding on the notes. Their contention is based on the arbitration clause's provision that any defense except proof of payment "shall only be made by Borrower in a separate arbitration proceeding." Respondent's FEHA claims cannot defeat Morgan Stanley's claim in arbitration that all amounts outstanding under

7.

the notes are due and payable.  Thus, as to the notes, it would be an idle act to conduct a separate arbitration proceeding on respondent's seventeenth affirmative defense. "The law neither does nor requires idle acts."  (Civ.Code, § 3532.)

The arbitration clause of the third promissory note for $128,794 is different from the arbitration clause of the 2010 and 2011 notes.  Respondent signed the third note in January 2013, six months before she left Morgan Stanley.  The arbitration clause of this note provides: "To the fullest extent permitted by law, Borrower expressly waives the right to assert a counterclaim in opposition to any claim or action against Borrower by Note Holder . . . on this Note.  Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding.  The foregoing does not preclude Borrower from asserting a *valid* defense, if any, in opposition to any claim or action brought against Borrower by Note Holder . . . on this Note."  (Italics added.)

Unlike the arbitration clause of the 2010 and 2011 notes, the arbitration clause of the 2013 note permits respondent to assert her statutory FEHA claims in an arbitration proceeding on the note provided that these claims constitute a "valid defense" to Morgan Stanley's statement of claim.  Respondent contends that appellants are precluded from arguing that this language in the 2013 note mandates arbitration because they failed to raise the issue in the trial court.  But "even where a legal argument was not raised in the trial court, we have discretion to consider it when [as here] the theory raised for the first time on appeal is a pure question of law applied to undisputed facts.  [Citation.]"  (*San Mateo Union High School District v. County of San Mateo* (2013) 213 Cal.App.4th 418, 436.)  We exercise our discretion to consider appellants' argument concerning the 2013 promissory note.

The argument fails.  Respondent's statutory FEHA claims, if proven, cannot constitute a *valid* defense to Morgan Stanley's statement of claim on the 2013 note. The note's acceleration clause applies regardless of whether respondent voluntarily left her employment or was expressly or constructively discharged by Morgan Stanley.

8.

The acceleration clause provides that "[a]ll amounts outstanding under the Note shall automatically be, and become, immediately due and payable" upon the termination of respondent's employment for "*any reason or no reason whatsoever.*"  (Italics added.)  "[A]ny reason or no reason whatsoever" does not mean a legitimate, lawful reason.  "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'  [Citation.]  [The drafter of the 2013 note] did not add any language limiting the breadth of that word . . . ."  (*U.S. v. Gonzales* (1997) 520 U.S. 1, 5 [117 S.Ct. 1032, 137 L.Ed.2d 132].  Instead, the drafter inserted the word "whatsoever," indicating that the breadth is unlimited.

In any event, at the hearing on the motion to compel arbitration, respondent's counsel said that respondent was abandoning her seventeenth affirmative defense that the FEHA claims in her civil action are a defense to Morgan Stanley's claim in arbitration on the notes:

"THE COURT: . . . "[I]sn't she [appellants' counsel] to some degree right . . . that really what you're doing here is you're saying -- as a defense to the acceleration of the note, you're saying the discriminatory activity is the defense to that acceleration?

"[Respondent's counsel]: No -- unfortunately, it's not a defense.  They [i.e., appellants] persuaded me in their briefing it's not a defense.

"THE COURT: Right.

"[Respondent's counsel]: And I can't raise it and I'm no longer asserting it.  My relief on the FEHA claims . . . is damages. . . . So there's not going to be any determination in my FEHA claims that would arguably . . . trigger anything in the notes disputes.  The notes dispute is very simple.  Did we pay it or did we not?"

In view of respondent's abandonment of her seventeenth affirmative defense, the trial court properly denied appellants' motion to compel arbitration of the FEHA claims to the extent that the motion was based on the notes' arbitration clauses.  Appellants argued that the FEHA claims are related to the notes, and thus subject to mandatory arbitration, because of the seventeenth affirmative defense.

*Submission Agreement*

Appellants maintain that respondent's "statutory claims also must be arbitrated for the independent reason that they fall within the plain terms of the arbitration agreement in the Submission Agreement." In the Submission Agreement respondent agreed to "submit the present matter in controversy, as set forth in the attached statement of claim [and] answer[] . . . to arbitration." Appellants argue: "By asserting in the Answer that her discrimination claims constitute a 'complete defense' to Morgan Stanley's claims in the FINRA arbitration . . . , [respondent] made clear that they are part of the same 'controversy.' "

In construing the Submission Agreement, we "attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made [citation].' [Citation.]" (*Victoria v. Superior Court*, *supra*, 40 Cal.3d at p. 744.) By signing the Submission Agreement, respondent did not intend to submit her statutory FEHA claims to binding arbitration. On the same day that she signed the Submission Agreement, she filed her answer to Morgan Stanley's statement of claim. Although her answer's seventeenth affirmative defense referred to her FEHA claims, respondent intended that they be decided in her superior court lawsuit before the arbitration proceedings began. She alleged that the arbitration "should be stayed pending the final outcome of [her] lawsuit" in superior court. The seventeenth affirmative defense is entitled "Stay of Arbitration Proceedings." (Bold omitted.)

Even if the Submission Agreement could be construed as encompassing respondent's FEHA claims based on her seventeenth affirmative defense, her later abandonment of that defense means that these claims are not part of the controversy in the arbitration proceeding and, therefore, not arbitrable pursuant to the Submission Agreement.

10.

*Disposition*

The order denying appellants' motion to compel arbitration of the first through eighth statutory causes of action is affirmed.  Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, A.P.J.


We concur:


PERREN, J.


CHANEY, J.*


*Assigned by the Chairperson of the Judicial Council.


11.

James Herman, Judge

Superior Court County of Santa Barbara

_____


Trish Higgins, Andrew L. Brown and Lynne C. Hermle; Orrick, Herrington & Sutcliffe. for Appellants.


Pierce O'Donnell, Rachel Wilkes Barchie; Greenberg, Glusker, Fields Claman & Machtinger, for Respondent.