Filed 9/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAN FRANCISCO POLICE OFFICERS' ASSOCIATION, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> SAN FRANCISCO POLICE COMMISSION et al., <br><br>     Defendants and Respondents. | A151654 <br><br> (San Francisco City and County Super. Ct. No. CPF-16-515408) |

    The San Francisco Police Officers' Association (Association) appeals from the trial court's order denying its petition to compel arbitration brought against the San Francisco Police Commission (Commission); the City and County of San Francisco (the City); and Toney Chaplin, in his official capacity as interim Chief of Police of the San Francisco Police Department (collectively, respondents). The action arose from the City's denial of the Association's grievance challenging the City's refusal to further meet and confer before adopting and implementing a revised use of force policy for the San Francisco Police Department (SFPD). On appeal, the Association contends the court improperly (1) found that its challenge to the City's denial of its grievance related to the revised use of force policy was not subject to arbitration under the Memorandum of Understanding (MOU) between the City and the Association, and (2) denied the petition to compel arbitration based on the substantive merit of the underlying grievance.

    Because we conclude the trial court properly found that the parties had not agreed to subject the City's determinations regarding the revised use of force policy to arbitration, we shall affirm the court's order denying the Association's petition to compel arbitration.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Association is the recognized employee organization within the meaning of the Meyers-Milias-Brown Act (MMBA), Government Code sections 3500-3510,[1] representing SFPD police officers.  (See § 3501, subd. (b).)  The City is a charter city organized under article XI of the California Constitution (article XI) and is the employer of the police officers represented by the Association.  Under article IV, section 4.109 of the San Francisco Charter, the City has empowered the Commission to, inter alia, "prescribe and enforce any reasonable rules and regulations that it deems necessary to provide for the efficiency of the [SFPD] . . . ."

The MOU between the City and the Association covered the period from July 1, 2007, through June 30, 2018.  Article I, section 4 of the MOU set forth negotiation responsibilities of the parties, including the right of the Association to be provided with notice and an opportunity to meet and confer regarding "any proposed change in general orders or other matters within the scope of representation . . . ."  (MOU, art. I, § 4, ¶ 8.)  Article I, section 5 of the MOU governed grievance procedures; paragraph 16 of section 5 discussed the arbitrability of disputes.

In late 2015, the Commission announced that it planned to revise SFPD's use of force policy (SFPD General Order 5.01).  The Commission then began meeting with use of force policy experts, community members, and other stakeholders, seeking to build public trust and engagement and to ensure that the policy reflected the best practices in law enforcement.  In response to a February 2016 letter from the Association, requesting that the City meet and confer regarding the Commission's proposed use of force policy, the City stated that "[w]hile the formation of the policy is a managerial right outside the scope of bargaining, we welcome the [Association's] participation as a stakeholder in this preliminary process."  The City did agree to meet with the Association once the new policy was approved, "to consider the negotiable impacts that the policy may have."

_____

[1] All further statutory references are to the Government Code unless otherwise indicated.

2

After several months of meetings with experts and other stakeholders, including the Association, a consensus draft use of force policy was prepared. There was agreement on most aspects of the revised policy, but some disagreement remained between the City and the Association, primarily regarding a provision that prohibited police use of the carotid restraint and a provision that strictly prohibited officers from shooting at moving vehicles. On June 22, 2016, the Commission voted unanimously to adopt the draft policy, subject to "meet and confer" with the Association.

Over the following five months, the City met nine times with the Association. From the outset, the City stated that it was reserving "all rights related to its management rights and what matters, if any, fell within the scope of representation." On October 21, 2016, after exchanging several "package deal" proposals and counterproposals with the Association in an effort to resolve remaining disagreements, the City determined that it could not agree to the Association's proposed exceptions to the provision that prohibits shooting at moving vehicles. The City therefore determined that any further discussion of that issue would be futile and declared impasse.

On October 24, 2016, the Association sent a letter to the City disputing that the parties were at impasse.

On October 27, 2016, the Association filed a grievance alleging that the City had declared impasse prematurely and had failed to negotiate in good faith in violation of the MOU, and requesting as a remedy that the City be required to return to negotiations and enter into a written agreement on matters to which the parties had verbally agreed, including the Association's proposed exception to the prohibition against shooting at moving vehicles.

In the days following the declaration of impasse, the City reconsidered its position, ultimately concluding that it would no longer negotiate regarding "out-of-scope management rights" and that four of the five remaining areas of disagreement "were outside the scope of representation and clearly management rights." These included, inter alia, the strict prohibition against shooting at moving vehicles and the ban of the use of the carotid restraint. The only remaining issues the City believed were within the

3

scope of representation were related to training and discipline. On November 3, the City sent a letter to the Association explaining its position.

On December 7, 2016, the parties met and reached an agreement on the training and discipline processes under the revised use of force policy.

On December 20, 2016, the Association filed a complaint in the trial court seeking a temporary restraining order and a preliminary injunction preventing implementation of the use of force policy and further seeking an order compelling arbitration under the MOU and a writ of mandate ordering the City to participate in impasse resolution procedures under the City Charter or state law.

On December 21, 2016, the Commission voted unanimously to adopt the revised use of force policy, which included the provisions prohibiting the carotid hold and shooting at moving vehicles challenged by the Association. (See Draft SFPD General Order 5.01, rev. 12/21/16.)

On December 22, 2016, the City sent a letter to the Association informing it that, having agreed on all issues on the use of force policy potentially with the scope of representation, it had successfully completed the meet and confer process on the policy.

On December 23, 2016, the Association filed an application for a temporary restraining order and order to show cause re preliminary injunction to stay implementation of the new policy pending arbitration of its grievance. On December 27, 2016, the court denied the requested relief based on its findings that (1) the Association was unlikely to prevail on the merits at trial because under California law, a use of force policy is a managerial decision, regarding which the City was not subject to meet and confer requirements, and (2) "the balancing of 'interim harm' " favored the City.

On December 28, 2016, the Association filed an amended grievance, adding an issue concerning whether the City had any obligation to negotiate regarding any aspect of its new use of force policy. On January 13, 2017, the City denied the amended grievance and rejected the Association's arbitration demand.

On January 19, 2017, the Association filed a petition to compel arbitration of its amended grievance against the City.

4

Also on January 19, 2017, the City demurred to the cause of action for writ of mandate in the Association's complaint, claiming the City had no duty to bargain via impasse resolution procedures regarding disputed matters outside the scope of representation. On February 8, 2017, the Association filed a request for dismissal of its cause of action for writ of mandate, and a dismissal was entered.

On February 27, 2017, at the conclusion of a hearing on the Association's petition to compel arbitration of its amended grievance, the court denied the petition after finding there was no agreement to arbitrate the issues raised in the grievance. In its oral ruling, the court explained: "I do believe that this particular area, in regards to Use of Force, has been clearly defined by the . . . courts that that is an exclusive management area[,] it's an exercise of local police powers. [¶] . . . [¶] So I don't think that this is a matter of determination under a labor bargaining situation or an arbitration situation. I think that the City is well within its authority, constitutional authority as well as City management authority, to exercise local police authority in regards to the Use of Force as defined in *San Jose* [*Peace Officer's Assn. v. City of San Jose* (1978) 78 Cal.App.3d 935 (*San Jose*)]." On April 3, 2017, the court entered an order denying the petition to compel arbitration.

On April 11, 2017, the Association filed a petition for writ of mandate in this court, which we denied on May 22, 2017.

On April 28, 2017, the Association filed a notice of appeal.

On March 6, 2018, we granted the unopposed application of the Bar Association of San Francisco and the American Civil Liberties Union of Northern California for permission to file amici curiae briefs in support of the City's position. Also on March 6, we granted the unopposed application of the League of California Cities and California State Association of Counties for permission to file an amicus curiae brief in support of the City's position.

# DISCUSSION

## I. *Arbitrability of the Association's Grievance*

The Association contends the court improperly found that the City's denial of its amended grievance was not subject to arbitration under the MOU, arguing moreover that, under the MOU, it was for the arbitrator to decide the question of arbitrability in the first instance.

### A. *Relevant Legal Principles*

#### 1.

Petitions to compel arbitration are governed by Code of Civil Procedure section 1281.2, which provides in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that" certain exceptions apply.

The party requesting arbitration bears the burden of proving the existence of an agreement to arbitrate a particular controversy. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) "Doubts are resolved in favor of arbitration. 'In determining whether a matter is subject to arbitration, courts apply the presumption in favor of arbitration [citation]'. . . . " 'Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute.' " [Citation.]' [Citation.]" (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 204–205 (*California Correctional Peace Officers*).) Nevertheless, " ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' [Citations.]" (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744 (*Victoria*).) Where, as here, the evidence is not in conflict, we review

6

the trial court's denial of an arbitration petition de novo. (*Pinnacle Museum Tower Assn.*, at p. 236.)

**2.**

The MMBA, which applies to local government employees in California, " 'has two stated purposes: (1) to promote full communication between public employers and employees, and (2) to improve personnel management and employer-employee relations. (§ 3500.) To effect these goals the act gives local government employees the right to organize collectively and to be represented by employee organizations (§ 3502), and obligates employers to bargain with employee representatives about matters that fall within the "scope of representation." (§§ 3504.5, 3505.)' [Citation.] The duty to meet and confer in good faith is limited to matters within the 'scope of representation' . . . . (§ 3505.)" (*Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 630 (*Claremont*), quoting *Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 657, 665 (*Building Material*).)

"Section 3504 defines 'scope of representation' to include 'all matters relating to employment conditions and employer-employee relations, including, but not limited to, *wages, hours, and other terms and conditions of employment,* except, however, that the scope of representation shall not include consideration of the *merits, necessity, or organization* of any service or activity provided by law or executive order.' " (*Claremont*, *supra*, 39 Cal.4th at p. 631, quoting *Building Material*, *supra*, 41 Cal.3d at p. 658.) "A fundamental managerial or policy decision . . . is outside the scope of representation (§ 3504), and is excepted from section 3505's meet-and-confer requirement." (*Claremont*, at p. 628; accord, *Building Material*, at p. 663 ["Federal and California decisions both recognize the right of employers to make unconstrained decisions when fundamental management or policy choices are involved"].)

In *San Jose*, *supra*, 78 Cal.App.3d at page 941, Division Three of this District addressed whether the MMBA required a city to meet and confer with a police officers' union before making changes to the city's use of force policy, an issue the court described as one of first impression. The court answered this question in the negative,

7

explaining: "It is undoubtedly true, as the trial court found, that a change in the use of force policy, particularly when such a change inhibits the ability of a police officer to fire at a suspected criminal, has some effect on the safety of the police officer—clearly a term or condition of employment. It is equally true, however, that the use of force policy is as closely akin to a managerial decision as any decision can be in running a police department, surpassed only by the decision as to whether force will be used at all. . . . [W]e can imagine few decisions more 'managerial' in nature than the one which involves the conditions under which an entity of the state will permit a human life to be taken. . . . 'The formulation of a policy governing use of deadly force by police officers is a heavy responsibility involving the delicate balancing of different interests: the protection of society from criminals, the protection of police officers' safety, and the preservation of all human life if possible. This delicate judgment is best exercised by the appropriate legislative and executive officers. . . .' " (*San Jose*, at pp. 945-946, quoting *Long Beach Police Officers Assn. v. City of Long Beach* (1976) 61 Cal.App.3d 364, 371.)

The *San Jose* court further explained that because the question of police officer safety "is so inextricably interwoven with important policy considerations relating to basic concepts of the entire system of criminal justice[,] we cannot say that the use of force policy concerns 'primarily' a matter of wages, hours or working conditions." (*San Jose, supra,* 78 Cal.App.3d at p. 946.) Moreover, "we observe that any such danger [to police] obviously extends equally as much to the public at large as it does to the individual police officer. Such an effect on public safety lends further support to our conclusion that the use of force policy is primarily a matter of public safety and therefore not a subject of meeting and conferring under the MMBA. While the policy may impinge on a condition of employment, it impinges only indirectly. [¶] The power of a city to enact and enforce regulations relating to the use of firearms by police officers is in the exercise of the police power granted by article XI, section 7 of the California Constitution [citation]. A governmental agency may not suspend, bargain or contract away its police power." (*San Jose*, *supra*, 78 Cal.App.3d at pp. 946-947.) The court therefore held that the city's use of force policy fell "within the exception delineated in

8

section 3504. . . . The policy clearly constitutes a managerial decision which is not properly within the scope of union representation and collective bargaining." (*San Jose*, at p. 948.)

In the years since *San Jose* was decided, the California Supreme Court has not directly addressed this issue of collective bargaining and use of force policies, although it has twice cited with approval the holding in *San Jose* as an example of a fundamental managerial or policy decision not subject to the meet-and-confer requirements of section 3505. First, in *Building Material*, *supra*, 41 Cal.3d at pages 655, 657, the court addressed whether a local government was required to meet and confer with the employee bargaining unit before deciding to transfer bargaining-unit work to nonunit employees, ultimately determining that it was required to do so because its transfer decision was not a fundamental managerial or policy decision. The court, however, affirmed that where an action *is* "taken pursuant to a fundamental managerial or policy decision, it is within the scope of representation only if the employer's need for unencumbered decisionmaking in managing its operations is outweighed by the benefit to employer-employee relations of bargaining about the action in question." (*Id.* at p. 660.) The court distinguished *San Jose*, with its use of force policy, and *Berkeley Police Assn. v. City of Berkeley* (1977) 76 Cal.App.3d 931, which involved a policy allowing a member of the citizen's police review commission to attend hearings regarding citizen complaints against police, from the case before it, explaining that the managerial decisions in the other two cases "are of obvious importance, and directly affect the quality and nature of public services. The burden of requiring an employer to confer about such fundamental decisions clearly outweighs the benefits to employer-employee relations that bargaining would provide." (*Building Material*, at p. 664.)

More recently, in *Claremont*, *supra*, 39 Cal.4th at page 628, our Supreme Court discussed the "distinction between an employer's fundamental managerial or policy decision," which is outside the scope of representation (§ 3504) and is excepted from section 3505's meet-and-confer requirement, "and the implementation of that decision." To determine whether an employer's action *implementing* a fundamental managerial or

9

policy decision is subject to section 3505's negotiation requirement, the court fleshed out the balancing test previously set forth in *Building Material*. (*Claremont*, at p. 628.) The court in *Claremont* again cited the managerial decision at issue in *San Jose*, i.e. "changing the policy regarding a police officer's use of deadly force," as an example of a "fundamental managerial or policy decision" that is outside the scope of representation for purposes of section 3505's meet-and-confer requirement. (*Claremont*, at p. 632, citing *San Jose*, *supra*, 78 Cal.App.3d at p. 947.)

### B. *Application of the Relevant Legal Principles to the Present Case*

In the present case, paragraph 16 of article I, section 5 the MOU governs arbitrability of disputes between the City and the Association and provides in relevant part: "Grievances or disputes regarding the application or interpretation of this Agreement or relating to working conditions arising out of this Agreement . . . , including the arbitrability thereof, shall be settled in conformity with the following procedure.[2] Except, however, actions taken by the City that are necessary to ensure compliance with federal, state or local laws, ordinances or regulations . . . shall not be grievable hereunder. . . . In addition, in the event the City acts on a matter it has reasonably determined to be mandated by or necessary to ensure compliance with . . . federal, state, or local laws, ordinances or regulations, that action shall not be grievable hereunder. In the event a grievance is filed relating to such actions, arbitrability shall be determined by a court of competent jurisdiction."

The Association's amended grievance demanded arbitration based on the City's unilateral decision to implement the revised use of force policy. The amended grievance asked the arbitrator to determine the following issues: (1) did the Commission have a contractual obligation to negotiate any aspect of the use of force policy; (2) if so, did that obligation extend to negotiating about the elimination of the carotid restraint and

---

[2] The MOU then sets forth the various administrative steps that must be taken to resolve a grievance, culminating if necessary in arbitration of the grievance. (MOU, art. I, § 5, ¶¶ 17-29.)

10

prohibition on shooting at a moving vehicle; and (3) if so, did the City fail to negotiate in good faith its refusal to reduce to writing agreements it made during negotiations regarding these two issues. The Association requested several remedies, including a determination that the Commission was obligated "to meet and confer over the impacts of the Use of Force Policy on officer safety, training, workload, and discipline"; a determination that the Commission had violated article I, section 4 of the MOU regarding the parties' negotiation responsibilities and had committed an unfair labor practice; "[a]n order requiring the Commission to suspend the revised Use of Force Policy and meet and confer with the [Association] in good faith, including entering into a bilateral written agreement on agreements reached at the table"; and a posting that the Commission had violated the MOU and committed an unfair labor practice.

In a declaration filed in support of respondents' opposition to the Association's petition to compel arbitration, Suzanne Mason, the employee relations director for the San Francisco Department of Human Resources stated that, "[a]t all times relevant to [the Association's] grievance, the City acted based on its reasonable determination that its actions were necessary to comply with the Charter and state law holding that a use of force policy is a nondelegable management right, not subject to bargaining or arbitration."

In its order denying the petition to compel arbitration, the court relied on the *San Jose* and *Building Materials* opinions in finding "that determination and implementation of local use of force policies by [the City] governing the activities of local law enforcement were exclusively within its state constitutional authority." (See art. XI, § 7.) The court therefore concluded that the City had "properly exercised its constitutional authority through its City Charter Mandated San Francisco Police Commission" (San Francisco Charter, art. IV, § 4.109), that the use of force policies were "not matters subject to the meet and confer requirements of the Government Code," and that the City's actions "in enacting and implementing its use of force policy [were] not subject to arbitration authorized by the MOU."

11

We conclude the trial court properly made the arbitrability determination in the first instance, based on the provision in the MOU that arbitrability is to be determined by the court when a grievance is filed as to actions the City has reasonably determined to be necessary to ensure compliance with state law. (See MOU, art. I, § 5, ¶ 16.) Likewise, the court properly found that the Association's amended grievance, alleging that the City failed to negotiate in good faith before deciding on and implementing the revisions to its use of force policy, was not arbitrable under the provisions of the parties' MOU. (*Ibid*.) Instead, the policy was a "matter [the City had] reasonably determined to be mandated by or necessary to ensure compliance with . . . state law," which was not subject to the MOU's grievance procedure. (*Ibid*.) As the court put it in *San Jose*: "The power of a city to enact and enforce regulations relating to the use of firearms by police officers is in the exercise of the police power granted by article XI, section 7 of the California Constitution [citation]," which a "governmental agency may not suspend, bargain or contract away . . . ." (*San Jose*, *supra*, 78 Cal.App.3d at pp. 946-947; see also *Claremont*, *supra*, 39 Cal.4th at p. 632; *Building Material*, *supra*, 41 Cal.3d at p. 664.)[3]

The Association nonetheless argues that the exception set forth in article I, section 5, paragraph 16 of the MOU—that " 'actions taken by the City that are necessary to ensure compliance with federal, state or local laws, ordinances or regulations . . . shall not be grievable hereunder' "—is inapplicable here because the Association "is not

---

[3] *California Correctional Peace Officers*, *supra*, 142 Cal.App.4th 198, relied on by the Association, is irrelevant to the present case. In that case, Division One of this District rejected the claim of the California Department of Personnel Administration "that it was entitled to avoid arbitration because its defense to the grievance relied on rights derived from a state statute" and only the courts "have the power to interpret and apply such statutes." (*California Correctional Peace Officers*, at p. 207.) As the court explained, "[t]here is no statutory exception for arbitrations presenting issues of statutory construction." (*Id*. at p. 211.) Here, of course, the question is whether the issues raised in the Association's grievance were arbitrable under the terms of the MOU, not whether questions involving statutory interpretation constitute a defense to the arbitration requirement contained in Code of Civil Procedure section 1281.2. (See MOU, art. I, § 5, ¶ 16.)

12

challenging 'actions' taken by Respondents; rather, its amended grievance concerned their failure to comply with their negotiation responsibilities before taking those actions." Therefore, according to the Association, regardless of whether the use of force decision itself was for the City alone to make, it was for an arbitrator to decide the question of arbitrability of the grievance since the claims therein related to the City's failure to meet and confer in good faith before implementing the policy. (See MOU, art. I, § 5, ¶ 16.)

First, even assuming the Association has not forfeited this issue due to the failure to raise it in the trial court, as the city claims (see, e.g., *Simplon Ballpark, LLC v. Scull* (2015) 235 Cal.App.4th 660, 669-670), the language of the December 28, 2016 grievance belies the Association's claim that it is challenging only the process leading up to the City's decision. The grievance, which asks, inter alia, for "[a]n order requiring the Commission to suspend the revised use of force policy and meet and confer with the [Association] in good faith, including entering into a bilateral written agreement on agreements reached at the table," makes clear that the Association seeks to suspend and ultimately overturn the City's decision on aspects of the use of force policy, and compel the City to acquiesce in the policy provisions proposed by the Association. As already discussed, it was for the City alone to make this fundamental managerial and policy decision. (See *San Jose*, *supra*, 78 Cal.App.3d at pp. 946-947.)

In addition, the fact that the City voluntarily met with the Association in order to receive its useful input and reach agreement if possible on the terms of the policy plainly does not mean that the City was thereby precluded from making a policy decision with which the Association did not agree. Rather, as the City clearly informed the Association in writing in February 2016, at the start of the process of revising the use of force policy: "While formation of the policy is a managerial right outside the scope of bargaining, we welcome the [Association's] participation as a stakeholder in this preliminary process."

Second, we also find without merit the Association's argument—raised only in its reply brief—that, regardless of the arbitrability of the City's adoption of the use of force policy itself, the City's duty to meet and confer encompassed the *impact* of its policy determinations on the working conditions of represented employees, which the parties

13

have yet to discuss and which was subject to arbitration under the MOU. (See *Claremont*, *supra*, 39 Cal.4th at p. 633 ["implementation of an employer's fundamental decision . . . is a separate consideration for purposes of section 3505's meet-and-confer requirement"].) The high court in *Claremont* summarized the balancing test first set forth in *Building Material* to determine whether an employer must meet and confer regarding implementation of a fundamental managerial or policy decision: "[I]f an action to implement a fundamental managerial or policy decision has a significant and adverse effect on the wages, hours, or working conditions of the employees—we apply a balancing test. The action 'is within the scope of representation only if the employer's need for unencumbered decisionmaking in managing its operations is outweighed by the benefit to employer-employee relations of bargaining about the action in question.' [Citation.]" (*Claremont*, at p. 638, quoting *Building Material*, *supra*, 41 Cal.3d at p. 660.) As already noted, the court in *Building Material* had distinguished the managerial decision in *San Jose* from that in the case before it, noting that decisions involving "the avoidance of unnecessary deadly force are of obvious importance, and directly affect the quality and nature of public services. *The burden of requiring an employer to confer about such fundamental decisions clearly outweighs the benefits to employer-employee relations that bargaining would provide.*" (*Building Material*, at p. 664, italics added; see also *Claremont*, at p. 632.) Thus, our Supreme Court has strongly suggested that a use of force policy is *not* subject to negotiation regarding its implementation.

Moreover, compelling the City to arbitrate issues surrounding the new use of force policy before it can be implemented would defeat the purpose of requiring cities to make fundamental managerial or policy decisions independently. (See *San Jose*, *supra*, 78 Cal.App.3d at pp. 946-947.) That is because it would essentially allow the Association to hold the policy in abeyance indefinitely by claiming the City acted in bad faith when it ended its voluntary negotiations without conferring over certain unstated impacts the policy might have on police officers.

14

Third, even assuming the City had some duty to negotiate with the Association regarding the impact of the new use of force policy on police officers' conditions of employment before implementing the policy,[4] the only such impacts raised by the Association during the entire meet and confer process were related to training and discipline. These training and discipline issues were in fact negotiated and ultimately resolved in a December 7, 2016 side agreement between the City and the Association.[5] Hence at the time the Association filed its December 28 amended grievance and its subsequent petition to compel arbitration, there were no outstanding pre-implementation issues related to the effects of the use of force policy on working conditions regarding which the City had refused to meet and confer. The Association may not now claim that there were additional unspecified anticipated effects of the policy that required negotiation and that were subject to the grievance and arbitration process under the MOU.

In sum, because the trial court correctly found that the Association's amended grievance raised no issues that the parties had agreed in their MOU to submit to arbitration, the trial court correctly denied the Association's petition to compel arbitration. (See *Victoria*, *supra*, 40 Cal.3d at p. 744.)

---

[4] The City had stated at the outset that it would "engage with [the Association]" once the new policy was approved, "to consider the negotiable impacts that the policy may have."

[5] Also of note, the December 7, 2016 side agreement contained the following provision: "The Department and the Union [i.e., the Association] agree to meet to discuss operational and implementational issues around the Use of Force Policy. The parties will meet monthly for the first six months after the implementation of the Use of Force Policy, then quarterly. The meetings will continue for the term of the current Memorandum of Understanding." Thus, before the Association filed its amended grievance, in which it requested "[a] determination that the Commission had an obligation to meet and confer over the impacts of the Use of Force Policy on officer safety, training, workload and discipline," the parties had already set forth a means of jointly addressing any impacts *following* implementation of the policy that are within the scope of representation

15

## II. *Whether the Trial Court Denied the Petition Based on the Merits of the Grievance*

The Association further contends the court improperly denied the petition to compel arbitration based on the substantive merit of the underlying grievance.

"Section 1281.2 expressly forbids the court from reaching the merits of the parties' dispute, instructing that '[i]f the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit.' [Citation.]" (*California Correctional Peace Officers*, *supra*, 142 Cal.App.4th at p. 205.)

Here, according to the Association, the court relied on *San Jose* and *Building Materials* to determine the underlying issue of whether the City was obligated to meet and confer with the Association, which was the threshold question for the arbitrator to decide. We disagree.

The court did not deny the petition based on its view of the merits of the underlying grievance. Rather, it had to address whether the issues raised were subject to the exceptions to arbitration set forth in paragraph 16 of article I, section 5 of the MOU, specifically that "actions taken by the City on a matter it has reasonably determined to be mandated by or necessary to ensure compliance with . . . federal, state, or local laws . . ." are not grievable, given that, "[i]n the event a grievance is filed relating to such actions, arbitrability is to be determined by a court of competent jurisdiction." (MOU, art. I, § 5, ¶ 16.) The court thus did no more than analyze whether the City had reasonably determined that its unilateral adoption of the revised use of force policy was mandated by state law, which was necessary to decide whether the issues raised in the Association's amended grievance were arbitrable. It properly found that they were not. (See *San Jose*, *supra*, 78 Cal.App.3d at pp. 946-947; see also *Victoria*, *supra*, 40 Cal.3d at p. 744.)

## DISPOSITION

The trial court's order denying the petition to compel arbitration is affirmed. Costs on appeal are awarded to respondents.

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Miller, J.


*San Francisco Police Officers' Association v. San Francisco Police Commission et al.*
(A151654)

Trial Judge:                                          Hon. Newton Lam

Trial Court:                                          San Francisco County Superior Court


Attorneys for Plaintiff and Appellant:                Messing Adam & Jasmine LLP
San Francisco Police Officers' Association            Gregg McLean Adam
                                                      Donald Paul Bird II
                                                      Janine Oliker
                                                      Joan Gonsalves


Attorneys for Defendants and Respondents:             San Francisco City Attorneys' Office
San Francisco Police Commission et al.                Trevor J. Koski
                                                      Jonathan Craig Rolnick
                                                      Katharine H. Porter


Attorneys for Amici Curiae:

The Bar Association of San Francisco                   Keker, Van Nest & Peters LLP
                                                      John W. Keker
                                                      Steven A. Hirsch
                                                      David W. Rizk


American Civil Liberties Union of Northern            Alan L. Schlosser
California


League of California Cities and California            Liebert Cassidy Whitmore
State Association of Counties                          J. Scott Tiedemann
                                                      Erich W. Shiners