Filed 5/14/21  WFP Securities v. Davis CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WFP SECURITIES, INC. et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>JAIMIE DAVIS,<br><br>Defendant and Appellant. | B304048<br>(Super. Ct. No. BS136533) |

APPEAL from orders of the Superior Court of Los Angeles County, Edward B. Moreton, Judge.  Reversed in part, affirmed in part, and remanded with directions.

Jaimie Davis, in pro. per., for Defendant and Appellant.

Reif Law Group, Brandon S. Reif, and Marc S. Ehrlich for Plaintiff and Respondent Curtis J. Sathre III.

———————————————

# INTRODUCTION

This is the third time Jaimie Davis and her former investment advisor at WFP Securities, Inc., Curtis J. Sathre III, have been in this court. In her first appeal, Davis challenged the superior court's 2012 judgment confirming a Financial Industry Regulatory Authority (FINRA) arbitration award against her after she lost an arbitration she filed against WFP Securities, Sathre, and others to recover losses allegedly incurred as a result of their bad investment advice. The judgment confirming the arbitration award included an award against Davis of over $135,000 in costs and expert fees. We affirmed the judgment. (*WFP Securities, Inc. v. Davis* (Apr. 15, 2014, B244528) [nonpub. opn.].)

In a subsequent petition for a writ of mandate, Davis challenged various postjudgment orders relating to Sathre's attempt to enforce his monetary judgment against Davis. We held the superior court erred in denying several motions by Davis without allowing her to appear telephonically at, and providing a court reporter for, the hearings on those motions. We reversed the postjudgment orders and directed the superior court to designate a different judge to hear Davis's motions. (*Davis v. Superior Court* (2020) 50 Cal.App.5th 607.)

In this appeal Davis challenges orders denying her motion to compel arbitration of various claims she says she has against Sathre and others at WFP Securities, her request to stay Sathre's efforts to enforce the money judgment against her, and her request to vacate certain abstracts of judgment and notices of lien. We conclude that the superior court erred in denying Davis's motion to compel arbitration of her tort claims, but that

the court did not err in denying some of her other requests for relief.  Therefore, we reverse some of the orders and affirm others.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Sathre's Efforts To Enforce the Judgment*

Sathre has been trying to enforce a money judgment against Davis since 2012.  In October 2012 the clerk of the Los Angeles County Superior Court issued an abstract of judgment, which Sathre recorded with the Orange County recorder's office.  In December 2017 and July 2018 Sathre filed requests for orders for Davis to appear for a judgment debtor examination.  In September 2018 he filed notices of lien against Davis's potential recoveries in *Davis v. Mid-Century Insurance Company, Inc. et al.,* Orange County Superior Court case number 30-2016-00877480-CL-BC-CJC, and *Davis v. Beugelmans, LLP et al.*, San Francisco County Superior Court case number CGC-17-558105.  In February 2019 Sathre served Davis with an order to appear for a judgment debtor examination.  Davis filed ex parte applications and motions to quash the order requiring her to appear for examination and to stay the proceedings.

B.      *Davis Files a Motion To Compel Arbitration*

On September 27, 2019 Davis filed a motion to compel arbitration, followed by an amended motion on October 7, 2019, a second amended motion on October 28, 2019, and a third

3

amended motion on December 24, 2019.[1]  Davis argued controversies had arisen between the parties that were subject to the arbitration agreement in the Direct Purchase Application Forms she signed with WFP Securities when she made her investments, which had required arbitration of her original claims for bad investment advice.  Davis and Sathre, on behalf of WFP Securities, signed the same arbitration form on at least 12 different occasions.

The arbitration agreement stated:  "I agree that all controversies which may arise between us concerning any transaction, the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, or any other matter, shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc. then in effect.  I understand that judgement [*sic*] upon any arbitration award may be entered in any court of competent jurisdiction."[2]  The agreement also stated:  "The parties are waiving their right to seek remedies in court, including the right to a jury trial."

---

[1]     The trial court struck any briefing filed after November 25, 2019, and the court ruled on the second amended motion Davis filed.  The second and third amended motions were essentially identical except for the date of the hearing, which the third amended motion stated was continued to January 8, 2020.

[2]     FINRA is the successor to the National Association of Securities Dealers, Inc. (NASD).  (See *Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1128, fn. 2.)

4

Davis argued she had claims against Sathre, WFP Securities, and John Schooler, WFP's president, that were subject to the arbitration agreement. She asked the court to order the parties to arbitrate her claims, to select Judicial Arbitration and Mediation Services, Inc. (JAMS) in Las Vegas as the dispute resolution provider organization, and to stay Sathre's enforcement of judgment proceedings pending the arbitration. Davis also asked the court to vacate the abstract of judgment and notices of lien, which she argued were "remedies in court" covered by the arbitration agreement.

And what were the claims Davis said she had against Sathre, Schooler, and WFP Securities that were subject to arbitration under the agreement? In her motion to compel arbitration, Davis said they were for "civil conspiracy to commit fraud, defamation, fraud, intentional infliction of emotional distress, invasion of privacy, declaratory relief, breach of contract, and conspiracy to cause economic harm." Davis claimed that, after reviewing deposition transcripts from the FINRA arbitration, she learned Sathre, Schooler, and WFP Securities made derogatory statements about her, including that she begged Sathre, Schooler, and WFP Securities to sell her the investments, that she bought the investments on the recommendation of her stepfather, and that she lied to FINRA staff and submitted false documents to FINRA after the arbitration. Davis alleged that Sathre, Schooler, and WFP Securities engaged in conspiracies to commit fraud and cause her economic harm and to intentionally cause her emotional distress. These conspiracies included defaming Davis and other clients to make Sathre, Schooler, and WFP Securities look good, representing they "would change their business practices so that actions like those of [Davis] would not

5

be able to get past their internal review system," and blaming their malfeasance on Davis to deprive her "of millions in whistleblower rewards . . . . " Davis also alleged Sathre defamed her by making false statements about her to members of her family and to the jury in a case Davis and another plaintiff brought in San Diego County Superior Court that the parties refer to as *Phalen v. Hosaka*, including that Davis was crazy, lied to serve her interests, and lied in the FINRA arbitration. Davis also claimed that Sathre and his attorney, Brandon Reif, conspired to obtain deposition transcripts from the *Phalen* matter without Davis's consent and without notice and that Sathre used those transcripts to tailor his testimony in *Phalen* to assist the defendant in that case, who Davis said was Sathre's "lifelong friend of 40 plus years."

Davis also stated her conspiracy and intentional infliction of emotional distress claims were based on "outrageous abusive and harassing debt collection tactics." According to Davis, Sathre, Schooler, and WFP Securities were aware she had a life-threatening medical condition and used "outrageous and illegal collection tactics," such as "staking 'large, menacing men'" outside her father's home and verbally harassing Davis and her father. Davis also claimed Sathre caused her severe emotional distress by serving her with an order for a judgment debtor examination during the *Phalen* trial in the presence of the jurors.

Finally, Davis claimed Sathre, Schooler, and WFP Securities breached the arbitration agreement by going to court to enforce the judgment against her. Davis said she was seeking declaratory relief to determine the rights of Sathre, Schooler, and WFP Securities "to utilize remedies in court including abstracts of judgments, orders for examination, and judgment liens."

Sathre opposed the motion, arguing that Davis did not give proper notice of the motion, that there was no existing controversy between the parties, that the arbitration agreement in the Direct Purchase Application Forms did not apply to Davis's claims, and that res judicata barred Davis from relitigating many of her claims. Sathre also argued that, in the absence of an applicable arbitration agreement, the court should not issue a stay.

C. *The Trial Court Denies Davis's Motion*

The trial court denied the motion. The court ruled: "There was no notice of the motion. There's no clear statement in the papers that were filed of the precise relief sought. And, in part, as a consequence of that, there's insufficient legal authority and insufficient admissible factual support for a judicial order. Also, while the precise relief sought is not completely clear, it appears that the principle of res judicata probably does apply. And additionally, there is insufficient showing to support the requested stay of proceedings." Davis argued that she did give proper notice of her motion and that her motion included a statement of her arbitrable claims. Davis also argued res judicata did not apply because the events giving rise to her claims occurred after the arbitration award in 2012. Davis timely appealed.[3]

---

[3] An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a); *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 66.)

7

## DISCUSSION

A. *The Superior Court Erred in Denying Davis's Motion*
   *To Compel Arbitration of Her Tort Causes of Action*

The basis for the trial court's denial of Davis's motion to compel arbitration is not very clear. The court stated there was no notice of motion, but there was.[4] The court stated Davis did not clearly state what relief she sought, but she did.[5] The court

---

[4]     The notice of motion stated: "TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: [¶] PLEASE TAKE NOTICE THAT on November 25, 2019 at 9:30am, in dept. 44 or as soon thereafter as the matter may be heard in the above-entitled Court, Defendant Jaimie Davis . . . will motion this court for an order compelling arbitration of all matters and disputes between the parties, for an order staying all proceedings between the parties pending completion of the arbitration, and for an order to vacate abstracts of judgments, liens and order for examination. This Motion is made pursuant to Code of Civil Procedure §1281, §1281.2, §1281.4, §1281.8, §1292.4 and §1293.2, on the grounds that there is a binding arbitration agreement between the parties that requires arbitration of all controversies and any other matter which may arise between the parties be determined by arbitration and the arbitration agreement. A controversy has arisen between the parties and Defendant makes claims of civil conspiracy to commit fraud, defamation, fraud, intentional infliction of emotional distress, invasion of privacy, declaratory relief, breach of contract, and conspiracy to cause economic harm." Kind of hard to miss that.

[5]     The motion stated: "WHEREFORE, Defendant prays: [¶] 1. That the arbitration proceed pursuant to the arbitration provision set forth in the agreement to arbitrate; [¶] 2. That the

8

stated res judicata "probably" applied, but whether it did was an issue for the arbitrator, not the court. (See *Loscalzo v. Federal Mutual Ins. Co.* (1964) 228 Cal.App.2d 391, 398 [preclusive effect of a prior judgment "bears upon the merits of the matter to be arbitrated which is to be determined by the arbitrator"]; *Interinsurance Exchange of Automobile Club of Southern Cal. v. Bailes* (1963) 219 Cal.App.2d 830, 836 ["It is for the tribunal in which a claim of res judicata is made to pass on the validity of such a contention, including a determination of the effect of the prior judgment."]; *Chiron Corp. v. Ortho Diagnostic Systems, Inc.* (9th Cir. 2000) 207 F.3d 1126, 1132 ["a res judicata objection based on a prior arbitration proceeding is a legal defense that, in turn, is a component of the dispute on the merits and must be considered by the arbitrator"].) And the court's statement there was "insufficient legal authority and insufficient admissible factual support for a judicial order" doesn't shed much light on the court's reasoning.

In any event, it is undisputed there was an agreement to arbitrate. Davis submitted copies of the Direct Purchase

---

Court order Plaintiffs to arbitrate all controversies and all matters which have arisen between the parties and to arbitrate the disputes which are the subject of this Motion in JAMS arbitration under JAMS Consumer rules in Orange County, California; [¶] 3. That all proceedings and all future proceedings between the parties be stayed pending completion of the arbitration; [¶] 4. For an Order that Plaintiffs vacate and remove the liens placed on Defendant's property and civil litigations and the order for examination pending the arbitration to preserve the rulings of the arbitrator and prevent those rulings from being moot, or in the alternative require the Plaintiffs to post a bond of $185,000 or an amount the court finds just." Ditto.

Application Forms that included the arbitration agreement, and Sathre did not object to their admissibility or argue they did not exist. To the contrary, in opposition to the motion to compel Sathre acknowledged their existence. Nor on appeal does he argue that there was no arbitration agreement or that he, unlike WFP Securities, is not a party to the agreement. The only issue is whether the arbitration agreement covers Davis's claims.

Davis argues that the arbitration agreement, which applies to "all controversies" between the parties concerning "any . . . matter," requires the parties to arbitrate her claims for fraud, conspiracy, defamation, intentional infliction of emotional distress, declaratory relief, invasion of privacy, and breach of contract. Sathre acknowledges the broad language of the arbitration agreement but contends it does not encompass Davis's claims because her claims are unrelated to the contracts containing the arbitration agreement. Sathre also points out that FINRA rules apply to the arbitration.

The superior court must order arbitration "if it determines that an agreement to arbitrate the controversy exists" between the parties and that one of the parties refuses to arbitrate the controversy. (Code Civ. Proc., § 1281.2.)[6] Because California has a strong public policy favoring arbitration, "'"[c]ourts should indulge every intendment to give effect to such proceedings [citation] and order arbitration unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."'" (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 356.) "'[A]ny reasonable doubt as to whether a claim falls within the

---

[6] Statutory references are to the Code of Civil Procedure.

10

arbitration clause is to be resolved in favor of arbitration.'" (*Ibid.*) "If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate that controversy may not be refused on the ground that the petitioner's contentions lack substantive merit." (§ 1281.2; see *San Francisco Police Officers' Assn. v. San Francisco Police Com.* (2018) 27 Cal.App.5th 676, 691 [section 1281.2 "'expressly forbids the court from reaching the merits of the parties' dispute'"].) "It is the party opposing arbitration who bears the burden to show the arbitration provision cannot be interpreted to cover the claims in the complaint." (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890.)

Questions of arbitrability rest "'substantially on whether the clause in question is "broad" or "narrow."'" (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 186.) "'A "broad" clause includes those using language such as "*any claim* arising from or *related to* this agreement'" [citation] or "'arising in connection with" the agreement' [citation]. 'It has long been the rule in California that a broadly worded arbitration clause . . . may extend to tort claims that may arise under or from the contractual relationship. "There is no requirement that the cause of action arising out of a contractual dispute must be itself contractual."'" (*Ibid.*; see *Howard v. Goldbloom* (2018) 30 Cal.App.5th 659, 663-664.) "For a party's claims to come within the scope of such a clause, the factual allegations of the complaint 'need only "touch matters" covered by the contract containing the arbitration clause.'" (*Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1052.) "Broad arbitration clauses are interpreted to apply to extracontractual disputes between the contracting parties, "'so long as they have their roots in the relationship between the

11

parties which was created by the contract.'" [Citations.] In deciding whether a dispute has its roots in the relationship created by the contract, we 'examine[ ] the nature of the agreement and of the claims and their relationship to one another . . . .'" (*Howard*, at p. 664.)[7]

The arbitration agreement here is the broadest of broad. It provides for arbitration of controversies between the parties concerning (1) "any transaction"; (2) the construction, performance, or breach of (a) the agreement or (b) any other agreement between the parties (regardless of when the parties entered into it); and (3) "any other matter." And (3) is a whopper: It provides for arbitration of a controversy between the parties concerning any matter at all, regardless of whether, as some agreements limit the scope of the arbitration provision, the claims arise out of or relate to the agreement. (3) easily includes the tort claims Davis alleges she has against Sathre, Schooler, and WFP Securities.

Sathre acknowledges as much, but argues the scope of the arbitration agreement cannot be "limitless." To be sure, and as we will discuss, the arbitration agreement has limits. But Sathre does not explain how the claims Davis seeks to arbitrate do not concern "any other matter" between the parties. The phrase appears at the end of the clause and is not modified by any subsequent language limiting its scope, such as "relating to the agreement" or "relating to the investment" or even "having

---

[7]     "Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; accord, *Kec v. Superior Court* (2020) 51 Cal.App.5th 972, 978.)

something to do with anything financial." (Cf. *Rice v. Downs*, *supra*, 248 Cal.App.4th at p. 187 [subsequent language "'arising out of this Agreement'" modified the phrase "'[a]ny controversy'"].)

Moreover, contrary to Sathre's assertion, to the extent Davis's claims need to "have their roots" in the contractual relationship between the parties, they do. The contractual relationship between Davis, as the investor, and Sathre, as the advisor, governed the investments Davis made with WPF Securities. Davis's claims include allegations that Sathre and others at WFP Securities made false statements about Davis's investments and her conduct during and after the FINRA arbitration and that they attempted to blame Davis for her investment losses. Similarly, the alleged extrajudicial debt collection activities (using "large, menacing men" rather than the legal procedures governing enforcement of judgments) relate to a debt Davis owes only because of the contractual relationship between the parties. These claims are firmly planted in matters relating to the contracts containing the arbitration agreement. (See *Brinkley v. Monterey Financial Services, Inc.* (2015) 242 Cal.App.4th 314, 332 ["Stated differently, '[t]o require arbitration, [a party's] factual allegations need only "touch matters" covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.'"].) The superior court erred in denying Davis's motion to compel arbitration of her tort claims.[8]

_____

[8] The parties disagree about where the arbitration should occur, who should be the arbitrator, and what rules should apply. Davis argues that, because the NASD is "defunct," the arbitration

13

B. *The Superior Court Did Not Err in Denying Davis's Motion To Compel Arbitration of Her Claims Relating to Sathre's Legal Efforts To Enforce the Judgment*

Davis argues that one of the controversies covered by the arbitration agreement is her claim that Sathre is improperly using judicial remedies to enforce the judgment the court confirmed after the arbitration. As stated, Davis frames this controversy as one over Sathre's right to use California law governing enforcement of judgments, including his filing of abstracts of judgment, judgment liens, and requests for orders to take her judgment debtor examination. Sathre argues the arbitration agreement allows him to enforce the existing judgment in court.

Sathre is correct on this point. As stated, the arbitration agreement provides that the judgment "upon any arbitration award may be entered in any court of competent jurisdiction." A judgment confirming an arbitration award "has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action of the same jurisdictional classification; and it may be enforced like any other judgment of the court in which it is entered, in an action of the same jurisdictional classification." (§ 1287.4.) Those provisions of law include all the rights and remedies under the enforcement of judgments law. (See *Gonzalez v. Toews* (2003) 111 Cal.App.4th

---

should be in Las Vegas pursuant to the JAMS Consumer Arbitration Rules. Sathre argues that FINRA is the successor organization to NASD and that FINRA rules should apply. These are matters for the parties and the superior court in the first instance. (See § 1281.6.)

14

977, 980 [the enforcement of judgments law "'is a comprehensive scheme governing the enforcement of all civil judgments in California'"]; *Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546 ["Detailed statutory provisions govern the manner and extent to which civil judgments are enforceable."].)  And only a court can enforce a civil judgment. (See *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1349 [absent the parties' stipulation, an arbitrator has no statutory power to enforce a judgment because "[s]uch authority would not only conflict with judicial power, but absent carefully prescribed procedures potentially interfere with the respective rights of the parties"].)  The superior court did not err in denying Davis's motion to compel arbitration of her claims relating to judicial enforcement of the judgment.

C.    *The Superior Court Should Reconsider Davis's Request To Stay the Enforcement Proceedings*

In connection with her motion to compel arbitration, Davis sought under section 1281.4 to stay Sathre's efforts to enforce the judgment against her.  Davis contends that, because she had a pending motion to compel arbitration, section 1281.4 required the court to issue the stay she requested.  She also sought to vacate the abstract of judgment and notices of lien, arguing the arbitration agreement prohibited Sathre from pursuing "court remedies."  Sathre argues that the arbitration agreement does not cover these claims and that, even if it did, there is no statutory basis for vacating the properly filed abstract of judgment and notices of lien.

Section 1281.4 generally requires the court to stay a pending court action if a court compels arbitration of a

15

controversy and the controversy overlaps with the issues pending in the court action.  The purpose of a stay under section 1281.4 "'is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved.' [Citation.]  'In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective.'" (*Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1152.)  However, "[i]f the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only." (§ 1281.4, third paragraph; see *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 556 ["'when there is a severance of arbitrable from inarbitrable claims, the trial court has the discretion to stay proceedings on the inarbitrable claims pending resolution of the arbitration"].)

As discussed, Davis's claims relating to Sathre's ability to judicially enforce the judgment, including by filing an abstract of judgment and liens, are not subject to arbitration.  The superior court, however, did not address whether the controversies that are arbitrable (Davis's tort claims against Sathre, Schooler, and WFP Securities) are severable from the controversies that are not (Sathre's use of the enforcement of judgment law) or whether the enforcement of judgment proceedings would disrupt the arbitration proceedings when and if Davis initiates arbitration of her claims.  Now that we have directed the superior court to vacate its order denying Davis's motion to compel arbitration, the superior court should reconsider Davis's request for a stay under section 1281.4 and determine whether the arbitrable and nonarbitrable claims are severable.  (See *Heritage Provider Network, Inc. v. Superior Court*, *supra*, 158 Cal.App.4th at

16

pp. 1152-1153 & fn. 10 [under section 1281.4, "'[i]f the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only'"].)

## DISPOSITION

The order denying Davis's motion to compel arbitration is reversed.  The superior court is directed to enter a new order granting Davis's motion to compel arbitration of her claims for fraud, conspiracy, intentional infliction of emotional distress, defamation, and invasion of privacy.  The order denying Davis's request for a stay is reversed, and the superior court is directed to reconsider Davis's request for a stay under section 1281.4.  The other orders are affirmed.  Sathre's motion for judicial notice is granted as to the abstract of judgment and notices of lien and otherwise denied as unnecessary.  The parties are to bear their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.


17